## SUPERIOR COURT OF BALTIMORE CITY.

Filed October 6, 1928.

FRANK H. DRIVER AND JOHN H. HOOVER, CO-PARTNERS, TRADING UNDER THE FIRM NAME OF C. DRIVER & COMPANY,

VS.

SOPHIA W. LOWER, LIKEWISE KNOWN AS S. W. LOWER.

*Smith & Smith* for plaintiff.
*Charles F. Harley* for defendants.

FRANK, J.—

This case was tried before the Court without a jury. At the conclusion of the case the defendant filed four motions to strike out testimony admitted subject to exception, and one prayer asking for a directed verdict for the defendant.

This action was upon the common counts. There is no special count. The cause of action was in the form of an open account for cattle sold and delivered, with credits for two payments on account.

The sole question involved was as to whether or not the defendant's late husband, in the conduct of the butchering business, referred to in the evidence, was acting as the authorized agent of the defendant so as to bind her for the purchase of cattle made in the course of that business. The correctness of the account, as showing sales, deliveries and payments, was not disputed.

On the facts the case is not free from difficulty. The legal questions involved, it seems to me, are simple and readily determined. I hold that the plaintiffs have offered evidence of apparent authority on the part of the deceased husband legally sufficient to require me to overrule defendant's motion to strike out testimony and to refuse the defendant's prayer. Accordingly, I so rule.

The undisputed evidence shows the following facts:

I. That the slaughter house and other property used in the conduct of the butcher business were owned by the defendant.

II. That the market stalls, from which the slaughtered beef was sold to the public, were, likewise, owned by the defendant.

III. All of these were leased verbally by the defendant to her late husband, the rent consisting merely in the payment of the taxes, license fees and other expenses.

IV. The bank account, opened in January, 1927, into which were put the proceeds of the business, and from

which all of the bills and expenses thereof were paid, was in the name of the defendant. She gave to her husband a large number of signed blank checks on this account, and with these he paid the debts and expenses of the business, and paid to her approximately $25 per week. This money, so paid to her, she testified was her allowance for running the household.

V. All of the proceeds of the sales of hides and fats, by-products of the business, were paid by check to the order of the defendant and deposited in this bank account.

VI. The sales in controversy in this case were solely evidenced by weight tickets issued by the official weighmaster of the Union Stock Yards, according to the established usage, and in form were from the plaintiffs to the defendant, and were so issued by direction of the husband.

VII. After the death of her husband, four checks, representing the proceeds of the sale of such hides and fats, and payable to the order of the defendant, came into her possession. Upon a demand of the administrator c. t. a. of her deceased husband she refused to deliver these checks over to him, and still had them in her possession at the trial.

As against these undisputed facts, the following also appear:

I. The slaughter house and market stalls, above referred to as owned by the defendant had, likewise, been owned by her for several years prior to January, 1927, when the business was first conducted in defendant's name by her husband, and, during these preceding years, the business had unquestionably been that of the husband and credit was extended to him by the plaintiffs.

II. Plaintiff's ledger account which, prior to January, 1927, had always been with the deceased husband, was continued in the same way after January, 1927, and the charges involved in this case appear on the books of the plaintiffs as against the deceased husband.

III. Nearly all of the invoices rendered by the plaintiffs were against the husband. Several of them, however, were against the defendant.

IV. In the period after January, 1924, the plaintiffs on two occasions accepted in settlement of their account, as it then stood, checks of the defendant in part payment and the notes of the husband for the balance. These notes were discounted by the plaintiffs in their bank. The undisputed testimony shows that the plaintiffs objected to receiving the husband's notes and demanded the notes of the defendant in each case, but, upon his assurances that the defendant would pay the notes, accepted the same.

V. The last transaction of the kind just referred to occurred on October 24, 1927. The amount of the indebtedness was then $2,614.45. This was paid by the check of the defendant for $1,014.45, and the note of the husband for $1,600, payable one month after date to the order of the plaintiffs. This note was, likewise, discounted by the plaintiffs. It has never been paid and is still in the possession, and is the property, of the plaintiffs.

These are the salient facts in this case. In addition, it appears that the husband kept his books and papers at his residence, and that the defendant frequently saw him at work upon them; that just before the change in the manner of the conduct of the business from the name of the husband to that of the wife, as above detailed, a judgment had been recovered against the husband by the Western National Bank of Baltimore, and that he had told the plaintiffs that he had some financial troubles, and, therefore, was going to conduct the business in the name of his wife.

I am satisfied from the evidence that she had a certain amount of knowledge of this situation and that she acquiesced in it and enabled him to carry on the business of the methods above set forth, and that the plaintiffs believed, and had the right to believe, that it was her business and that her husband was conducting it as her agent.

It appears from the undisputed evidence that the plaintiffs received and still hold the note of the deceased husband for $1,800, which they accepted in payment of their account, although relying upon the promise of the husband that the defendant would pay it. I may not, upon the common counts, find a verdict for them for the amount of this note. They accepted this note in payment and discounted it with their

bank upon the credit of the deceased husband's name as maker thereof. They still hold this note and are in a position to enforce it as against whomsoever may be liable thereon. It was accepted by them in lieu and in settlement of a portion of the open account, upon which they are now suing. I think it is clear, therefore, that as to the amount represented by this note, the present action can not be maintained.

My verdict is for the plaintiffs in the sum of $2,541.51.